## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

N.B.,

        Plaintiff,

    v.

COMMISSIONER OF THE
SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Civil No. 20-12720 (RMB)

**OPINION**

**BUMB**, U.S. District Judge:

This matter comes before the Court upon an appeal by Plaintiff from a denial of social security disability benefits. For the reasons set forth below, the Court shall vacate the decision of the Administrative Law Judge ("ALJ") and remand for proceedings consistent with this Opinion's reasoning.

## I.     STANDARD OF REVIEW

When reviewing a final decision of an ALJ with regard to disability benefits, the Court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." 42 U.S.C. § 405(g); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (*citing Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). "Substantial evidence" means "'more than a mere scintilla" or "such relevant evidence as a reasonable mind might accept as adequate." *Richardson v. Perales*, 402 U.S. 389, 401

1

(1971) (*quoting Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer*, 186

F.3d at 427 (citations omitted). In addition to the "substantial evidence" inquiry, the

Court must also determine whether the ALJ applied the correct legal standards. *See*

*Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *see also Sykes v. Apfel*, 228 F.3d

259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. *Sykes*, 228 F.3d

at 262 (*citing Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 1382(c)(a)(3)(A).  The Act further states the following:

> [A]n individual shall be determined to be under a disability only
> if his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists
> in the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

*Id.* § 1382(c)(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for

evaluating a claimant's alleged disability status for purposes of social security

benefits, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i-v).  The analysis proceeds as

follows:

At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.

At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201-02 (3d Cir. 2019) (alterations in original).

II.    **FACTS**

The Court recites herein only the facts that are necessary to its determination

on appeal. Plaintiff was 44 years old on the alleged onset date of July 27, 2015.

[Docket No. 12 (referred to hereafter as "Plaintiff's Brief"), at 1.] Plaintiff has a high

school education and has prior work experience as a dispatcher and/or a customer

service representative for several different companies, including Horizon Services,

Inc., Pilkington Auto Glass, New Century Trucking Company, and Tekserve, as well

as prior experience working as a part-time waitress at Friendly's restaurant. [*Id.* at 2-

3.] Plaintiff claims disability status, in part, arising from lumbar degenerative disc

disease, chronic pain syndrome, obesity, major depressive disorder, panic disorder,

diabetes mellitus, obstructive sleep apnea ("OSA"), neck/cervical strain, and

bilateral carpal tunnel syndrome. [*Id.* at 2.]

In support of her claim for social security benefits, Plaintiff provided

numerous medical records from her treating physicians and health care providers,

dated from March 2013 through February 2018, including emergency and inpatient

hospital records from Virtua Memorial Hospital, an MRI report by Dr. Christopher

Salerno (DO), office treatment records from Atlas Spine, treatment notes from Strive

Physical Therapy, office treatment records from North American Spine and Pain, a

Clinical Psychology Disability Examination Report by Consultative Examiner Dr.

Ronald Karpf (PhD), office treatment records from Dorfner Family Medicine,

treatment notes from Cooper Bone and Joint, and treatment notes from Lourdes

Medical Center Burlington County. [Docket No. 7-7.]

### III.  ALJ'S DETERMINATION

On December 26, 2018, the ALJ found Plaintiff not disabled for purposes of social security benefits, "finding the Plaintiff was capable of making a successful adjustment to other work." [Plaintiff's Brief at 1.] At Step Two of the five-step, sequential analysis, the ALJ found that Plaintiff had the following "severe" impairments:  lumbar degenerative disc disease (status post-surgery), chronic pain syndrome, obesity, major depressive disorder, and panic disorder. [Docket No. 7-2, at 17.] The ALJ also determined at Step Two that Plaintiff "has a number of impairments that do not have more than a minimal effect on her ability to do basic work activities and/or have not shown to last a continuous period of 12 months," and thus, did not qualify as a "severe impairment" under the applicable regulations, including Plaintiff's diabetes mellitus, OSA, neck/cervical strain, bilateral carpal tunnel syndrome, and history of substance abuse. [*Id.*]

The ALJ then found that none of Plaintiff's impairments, or any combination thereof, met or medically equaled the severity of an impairment listed at 20 C.F.R. Part 404, subpart P, Appendix 1. [*Id.* at 18.] The ALJ also considered the "paragraph B" criteria with respect to Plaintiff's mental impairments, finding that Plaintiff had a moderate limitation in each of the following four broad areas of functioning:  (1) understanding/remembering/applying information, (2) interacting with others, (3) concentrating/persisting/maintaining pace, and (4) adapting/managing oneself. [*Id.*

at 18-19.] Because Plaintiff's mental health impairments did not cause at least two "marked" limitations or at least one "extreme" limitation in any of the four broad areas of functioning, the ALJ determined that the "paragraph B" criteria were not satisfied. [*Id.* at 19.]

Before proceeding to Step Four, the ALJ determined that Plaintiff retained the following residual functional capacity ("RFC") to perform sedentary work with certain non-exertional limitations:

> [Plaintiff] could occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; the claimant would require 1-2 minutes of standing at the workstation after 30 minutes of sitting, and would require 1-2 minutes of sitting at the work station after 30 minutes of standing or walking, during which periods the claimant would be off task in addition to regularly scheduled breaks; she could understand, remember, carry out simple, routine instructions; could sustain attention and concentration over an 8 hour workday, with customary breaks, on simply, routine tasks; could use judgment in making work-related decisions commensurate with this same type of work; would be able to adapt to changes in a routine work setting; could have occasional interaction with coworkers and supervisors, beyond any increased interactions initially required to learn the job, and occasional interaction with the public.

[*Id.*]

The ALJ then turned to the testimony of impartial Vocational Expert Rocco Meola and determined, in light of the above limitations, that Plaintiff could not perform any of her past relevant work, but she could perform the jobs of document prep worker, scale operator, or table worker, and that a significant number of such jobs existed in the national economy, thus, finding Plaintiff not disabled for purposes of social security benefits. [*Id.* at 22-24.]

6

IV.     <u>**ANALYSIS**</u>

On appeal, Plaintiff asserts that three of the ALJ's findings, in particular, were not supported by substantial evidence:  (1) the ALJ's findings regarding her obstructive sleep apnea ("OSA"), carpal tunnel syndrome, and cervical pathology, including the ALJ's findings that such impairments did not qualify as "severe" impairments at Step Two, as well as the ALJ's failure to incorporate appropriate limitations for such impairments in the RFC assessment; (2) the ALJ's failure to incorporate additional limitations in the RFC assessment to account for Plaintiff's mental health impairments; and (3) the "inexplicable exception" included by the ALJ in the RFC assessment, which allowed for more frequent interaction with coworkers and supervisors during the initial training period despite the ALJ's findings that Plaintiff had a moderate functional limitation interacting with others. [Plaintiff's Brief at 15-25.]

a.     <u>**Plaintiff's OSA, Carpal Tunnel Syndrome, and Cervical Pathology –**</u>
       <u>**Step Two Findings and RFC Assessment**</u>

Plaintiff's first argument concerns the ALJ's findings as they relate to three of her impairments:  OSA, cervical pathology, and carpal tunnel syndrome. Plaintiff argues that "[t]he ALJ's findings that these impairments are "non-severe" at Step Two is [sic] in error, and the ALJ further compounded that error by failing to incorporate limitations consistent with the same in the RFC [assessment] as required." [Plaintiff's Brief at 15.] In response, the Commissioner argues that "[t]he

ALJ fully considered the record evidence, which does not support any further limitations," and that because the ALJ found that Plaintiff had several other "severe" impairments at Step Two and "[a]s long as the evidence is properly considered at the subsequent steps of the process, there can be no material deficiency at [S]tep [T]wo." [Docket No. 13 (referred to hereafter as "Commissioner's Brief"), at 11, 13.] The Court finds that the ALJ did expressly consider each of the Plaintiff's three challenged impairments at Step Two, and the Court also finds that the ALJ's Step Two findings were supported by substantial evidence. However, because the ALJ was also required to consider all of Plaintiff's impairments in the RFC assessment, including whether any additional restrictions or limitations are necessary to account for Plaintiff's "non-severe" impairments, the Court will remand and require the ALJ to provide a more-detailed analysis in the RFC assessment regarding Plaintiff's challenged impairments.

With respect to Plaintiff's OSA, the ALJ cited treatment records from Dorfner Family Medicine that noted a need for continuous positive airway pressure ("CPAP") therapy. [Docket No. 7-2, at 17.] The ALJ found that since there was no other evidence in the record regarding Plaintiff's OSA, it was "not shown to have no more than a minimal effect on the claimant's ability to do basic work activities" and thus, was not "severe" at Step Two. [*Id.* (*citing* Exhibit 10F, p. 14).] Similarly, the ALJ considered Plaintiff's neck and cervical strain, citing treatment records from Dr. Rastogi of North American Spine and Pain where Dr. Rastogi had reported a "full

range of motion of the neck with no pain," as well as treatment notes from Dorfner Family Medicine that Plaintiff "had visited an emergency room on June 22, 2018 due to muscle spasms" (which were worse in her cervical area), but that final assessment indicated Plaintiff "had a possible allergic reaction to prescribed medication." [*Id.* (*citing* Exhibits 8F and 14F, p. 12).] However, because "[t]here is no other evidence of cervical muscle spasm" and the instance involving Plaintiff's emergency room visit failed to establish that Plaintiff's "neck/cervical strain has had more than a minimal effect on claimant's ability to do basic work activities," the ALJ determined that such impairment was also "non-severe" at Step Two. [*Id.*]

The ALJ then considered Plaintiff's bilateral carpal tunnel syndrome at Step Two. The ALJ cited treatment notes from Dr. Nicole Jarrett (MD) of Cooper Bone and Joint, who had diagnosed Plaintiff with bilateral carpal tunnel syndrome and seen Plaintiff on May 2, 2017, reporting "positive Phelan test, Tinel sign[,] and compression test." [*Id.*] The ALJ also cited other treatment records, dated July 25, 2017, showing "results of EMG testing [that] demonstrated left greater than right carpal tunnel syndrome," and that Plaintiff wanted surgery, which Dr. Jarrett was preparing to perform. [*Id.*] At the hearing before the ALJ, Plaintiff testified to having undergone the surgery for her carpal tunnel syndrome on both hands, "but she still has swelling and numbness in her hands and difficulty holding things." [*Id.*] However, the ALJ found that record did not include any other documentation that the surgery was actually performed, as well "no indication of further treatment

9

documenting clinical findings." [*Id.*] Thus, the ALJ determined that "[t]he record, as it stands, does not support a severe impairment lasting a continuous period of 12 months," and found that Plaintiff's bilateral carpal tunnel syndrome was not a "severe" impairment at Step Two. [*Id.*]

Indeed, it is Plaintiff's burden to present evidence of her disability, and the Court is satisfied that the ALJ "provide[d] a careful evaluation of the medical findings that describe[e] the impairment(s)," as well as sufficiently explained why such medical findings supported his conclusion that Plaintiff's OSA, cervical pathology, and bilateral carpal tunnel syndrome were not "severe" at Step Two, as required. [Plaintiff's Brief at 16 (*citing* SSR 96-3).] The Court is not persuaded by Plaintiff's arguments that the ALJ should have given more weight to certain non-medical evidence in the record at Step Two, including her Functioning Report that Plaintiff struggles with many of her daily activities and Plaintiff's hearing testimony that she underwent surgery for her bilateral carpal tunnel syndrome but still experiences hand and arm pain. [*Id.* at 18-19.] The Court finds that the ALJ's Step Two findings are supported by substantial evidence.

Nevertheless, Plaintiff has clarified in her Reply Brief that the "crux" of her argument regarding her OSA, cervical pathology, and bilateral carpal tunnel syndrome, is "that even if the impairment is found non-severe, a finding of non-severity does not eliminate Plaintiff's impairments from consideration of Plaintiff's overall ability to perform work." [Docket No. 14 (referred to hereafter as "Plaintiff's

10

Reply Brief"), at 1.] The Court agrees, and Plaintiff is correct that her "[f]unctional limitations caused by all impairments, whether found to be severe or non-severe at [S]tep [T]wo, must be taken into consideration at steps three, four and five of the sequential evaluation." [Plaintiff's Brief at 16 (*citing Brown v. Astrue*, 2010 WL 4455825, at *4 (E.D. Pa. Nov. 4, 2010).] The Court agrees with Plaintiff that nowhere in the RFC assessment did the ALJ expressly consider whether or not Plaintiff's "non-severe" impairments of OSA, neck/cervical strain, and bilateral carpal tunnel syndrome warranted additional limitations in the RFC assessment, including Plaintiff's testimony that she continues to experience "numbness, swelling, and pain in her hands" caused by her bilateral carpal tunnel syndrome and Plaintiff's testimony that her "non-severe" impairments impacted her "ability to perform day-to-day work functions." [Plaintiff's Brief at 19.]

On remand, the ALJ shall revisit the RFC assessment and discuss whether or not additional limitations should be included based on the evidence in the record concerning Plaintiff's OSA, neck/cervical strain, and bilateral carpal tunnel syndrome, even if such impairments are "non-severe" at Step Two. The Court notes that the ALJ may very well reach the same conclusion on remand and determine that additional limitations in the RFC assessment are not warranted. However, the ALJ's consideration of such impairments in the RFC assessment will provide a sufficient development of the record and permit meaningful review by the Court, if necessary.

b.   <u>**Plaintiff's Mental Health Impairments – RFC Assessment**</u>

Plaintiff's second argument is that the ALJ erred by not including additional limitations in the RFC assessment to account for her mental health impairments, including her major depressive disorder and panic order (both of which the ALJ found to be "severe" impairments at Step Two), as well as the moderate functional limitations the ALJ determined Plaintiff had in each of the four broad areas of functioning when considering the "paragraph B" criteria. Plaintiff stresses, in particular, that "the ALJ did not adequately incorporate the Plaintiff's moderate limitations for concentration, pace, and persistence into the RFC [assessment]." [Plaintiff's Reply Brief at 4.]

Plaintiff relies primarily on the Third Circuit's decision in *Ramirez v. Barnhart*, in which the Circuit found that an ALJ erred because his hypothetical questioning to the vocational expert did not "adequately capture and recite all of [plaintiff's] mental impairments and the limitations caused by those impairments," when the ALJ observed that the plaintiff "*often* suffered from deficiencies in concentration, persistence, or pace" but did not pose any questions regarding that limitation to the vocational expert and merely included in the plaintiff's RFC assessment a "simple tasks" limitation. 372 F.3d 546, 549, 555 (3d Cir. 2004) (emphasis in original). The Third Circuit later clarified in *Hess*, that the rule after *Ramirez*, is that "as long as the ALJ offers a 'valid explanation', a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or

pace.'" 931 F.3d at 211. The concern in *Ramirez*, as clarified by the Third Circuit in *Hess*, was that "[m]any employers require a certain output level from their employees over a given amount of time, and an individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time." *Id.* (*citing Ramirez*, 372 F.3d at 554). The Third Circuit explained that "[t]he relationship between 'simple tasks' limitations and 'concentration, persistence, or pace,' is a close one," but "[w]ithout explanation, such a limitation does not warrant a conclusion about whether a claimant's difficulties in 'concentration, persistence, or pace' are so serious that he cannot satisfy the functional requirements of 'simple tasks.'" *Id.* at 212-213.

Here, the ALJ included in the RFC assessment a "simple tasks" limitation, and stated in his decision that his RFC assessment "reflects the degree of limitation I have found in the 'paragraph B' mental functional analysis." [Docket No. 7-2, at 19.] However, just like in *Ramirez*, the ALJ's RFC assessment does not provide any additional explanation as to how the RFC assessment takes into account Plaintiff's moderate limitations in each of the four broad areas of functioning that the ALJ found Plaintiff had when considering that the "paragraph B" criteria, including Plaintiff's moderate limitation in concentrating, persisting, or maintaining pace. On remand, the ALJ shall revisit the RFC assessment and explain whether or not additional limitations are warranted to account for Plaintiff's moderate limitations in each of the four broad areas of functioning measured by the "paragraph B" criteria.

With respect to Plaintiff's major depressive disorder and panic order (both of which the ALJ found to be "severe" impairments at Step Two), the Court finds that the ALJ's RFC assessment is supported by substantial evidence. Unlike the four broad areas of functioning measured by the "paragraph B" criteria, the ALJ did provide a rational explanation regarding how the RFC assessment accounted for both of Plaintiff's "severe" mental health impairments. The ALJ considered Plaintiff's history of depression, noting that she "was discharged in stable condition with no evidence of psychotic symptoms or suicidal ideation," after being hospitalized in July 2015 "due to relationship problems" and after she reportedly ingested medication. [Docket No. 7-2, at 22.] The ALJ also gave substantial weight to the findings of the state agency psychological consultants, which "establishes anxiety/panic issues, which I find, based on the overall record now available, limits the claimant to occasional interaction with coworkers, supervisors, and the public." [*Id.* at 23.] Thus, in considering Plaintiff's mental health impairments on remand, the ALJ should focus on whether or not additional limitations in the RFC assessment are necessary to account for Plaintiff's moderate limitations in the four broad areas of functioning as measured by each of the "paragraph B" criteria.

c.     **Exception for Increased Interactions During Initial Training Period– RFC Assessment**

Plaintiff's final argument is that "[t]he ALJ erred in inexplicably making an exception" in the RFC assessment that allows for more frequent interaction with

14

coworkers and supervisors during any initial training period, despite the ALJ's findings that Plaintiff's mental health limitations "allowed for only occasional interaction with coworkers and supervisors, as well as occasional contact with the general public." [Plaintiff's Brief at 22.] In response, the Commissioner argues that none of the three jobs the ALJ determined Plaintiff could perform – document prep worker, scale operator, or table worker – "pose a conflict with the residual functional capacity assessment," as the Dictionary of Occupational Titles ("DOT") provides that the amount of time for "Taking Instruction/Helping" in all three occupations is "N – Not Significant." [Commissioner's Brief at 18 (citations omitted).]

  The Court finds that the ALJ does not explain why the RFC assessment makes an exception for "increased interactions initially required to learn the job," and thus, the Court finds that the exception in the RFC assessment is not supported by substantial evidence. [Docket No. 7-2, at 19.] The Court, while mindful of the Commissioner's argument that any additional rationale from the ALJ on this point may not necessarily be consequential, finds that remand for further clarification from the ALJ is nonetheless appropriate. To the extent that the Court is already remanding the case for a more-detailed analysis from the ALJ regarding the RFC assessment and to the extent that the ALJ may find on remand that additional or revised limitations in the RFC assessment are warranted, the Court finds that other occupations than those previously considered by the ALJ may become relevant. In addition, the Court is not persuaded that the time for "Taking Instruction/Helping"

as specified in the DOT, even if such time is not significant, reflects the amount of interaction necessary to learn how to do a particular job during the initial training period, as expressly contemplated by the ALJ in the exception he included in the RFC assessment.

To put it differently, the record does not appear to support a finding that Plaintiff could work in an occupation that demanded near-constant interaction with coworkers and/or supervisors at any point, including during the initial training period, but such result is permitted by the RFC assessment if interaction with coworkers and supervisors is only "occasional" after such initial training period has ended. Without any additional explanation from the ALJ, the Court finds that such a result is not consistent with the ALJ's other findings, and thus, is not supported by substantial evidence. On remand, the Court will require further clarification from the ALJ as to why he included an exception in the RFC assessment that allows for more frequent interaction with supervisors and coworkers during the initial training period.

## V.   **CONCLUSION**

The Court concludes that remand, as opposed to reversal, is appropriate. On remand, consistent with the Court's Opinion, the ALJ shall determine whether or not additional limitations in the RFC assessment are warranted to account for the following:  (1) Plaintiff's "non-severe" impairments of OSA, cervical pathology, and carpal tunnel syndrome; (2) Plaintiff's moderate functional limitations in the four broad areas of functioning as measured by the "paragraph B" criteria; and (3)

whether or not an exception in the RFC assessment should be included that allows for more than "occasional" interactions with coworkers and supervisors during the initial training period.

For the foregoing reasons, the Court **vacates** the decision of the ALJ and **remands** for proceedings consistent with the above analysis. An accompanying Order shall follow.


Date: <u>January 28, 2022</u>                    <u>s/Renée Marie Bumb</u>
                                             Renée Marie Bumb
                                             U.S. District Judge